UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YANPING CHEN**, <br><br>  Plaintiff, <br><br> v. <br><br> **FEDERAL BUREAU OF INVESTIGATION**, *et al.*, <br><br>  Defendants. | Case No. 20-mc-107 (CRC) |

### MEMORANDUM OPINION

U.S. Army Chief Warrant Officer Stephen J. Rhoads moves to quash a subpoena served on his cell phone service provider, T-Mobile, by Dr. Yanping Chen. Dr. Chen is the plaintiff in a related Privacy Act lawsuit against several federal agencies, in which she alleges that personal records seized from her home by the Federal Bureau of Investigation were unlawfully leaked to Fox News. Mr. Rhoads is a non-party to the Privacy Act case who cooperated in the FBI's investigation of Chen and communicated with Fox News about her. Believing that Rhoads may have been involved in the alleged leak, Chen seeks access to logs of Rhoads's phone calls and text messages from December 2012 to the present. Rhoads contends that the subpoena is an unjustified intrusion on his privacy.

The Court will enforce the subpoena in part but modify it to reduce the burden on Rhoads's privacy. Specifically, the Court will narrow the subpoena to cover a shorter span of time and provide Rhoads an opportunity to seek redactions of irrelevant personal material before the communication logs are provided to Chen under a protective order. This disposition endeavors to balance Rhoads's legitimate privacy concerns with Chen's right to obtain relevant third-party discovery in her Privacy Act case.

I. Background

The following facts are alleged in Chen's Privacy Act complaint or drawn from the record in the instant discovery proceeding. Chen is a naturalized citizen of the United States and the founder of the University of Management and Technology ("UMT"), an educational institution that historically attracted a significant number of military servicemembers who attended with tuition assistance from the Department of Defense ("DOD"). Compl. ¶¶ 12-13, 42, Chen v. FBI, 18-cv-3074 (CRC). Rhoads is a U.S. Army officer and a former employee of UMT. Rhoads Decl. ¶¶ 4-5.

Starting in 2010, Chen was the focus of an FBI investigation concerning statements she made on immigration forms about her work in China in the 1980s. Compl. ¶ 15. In December 2012, the FBI executed search warrants for Chen's home and her office at UMT. Id. ¶ 18. The FBI allegedly collected large volumes of personal and business records during these searches, including family photographs. Id. ¶ 20.

The parties agree that Rhoads cooperated in the FBI investigation. Rhoads Mem. in Support of Mot. to Quash 5; Opp. 2-3. Rhoads informed DOD of the FBI investigation in 2013. Jones Decl. Exh. 2, ECF No. 18-3. Later, he sent at least two emails to other DOD employees containing what could be construed as references to a forthcoming news media report about Chen. First, on September 8, 2014, he wrote to another Army officer, "The DoD just signed a new [Memorandum of Understanding] with UMT back in July, that would allow . . . Chen to continue her current operation for another 5 years. I aim to stop that from continuing. This matter will soon be in the public eye." Jones Decl. Exh. 3, ECF No. 18-4. Second, in April 2015, Rhoads emailed a link to a Fox News story about a different FBI investigation, which he

described as "related" to the investigation of Chen. Rhoads stated, "Phase 1 has gone public. . . . Chen's story hits next week." Jones Decl. Exh. 7, ECF No. 18-8.

In March 2016, the U.S. Attorney's Office for the Eastern District of Virginia informed Chen that the FBI investigation would not result in any charges against her. Compl. ¶ 22.[1] During the next year, Rhoads communicated multiple times with Fox News. See Jones Decl. Exh. 9, ECF No. 18-10 (text messages with Fox News reporter from January and February 2017). There is also evidence that Rhoads may have forwarded numerous emails about Chen from his government email account to his personal address on February 16, 2017. See Jones Decl. Exh. 10 at 5-6, ECF No. 18-11 (representation by Chen's counsel that the government's discovery responses included 41 emails sent to Rhoads's personal email on that date).

Fox News broadcast a series of three reports about Chen, on February 24, April 28, and June 28, 2017. Compl. ¶¶ 25, 30. According to Chen, the Fox News reports included private photographs and documents that were seized by the FBI in the 2012 searches. Id. ¶¶ 25-31. Fox News also quoted from one of the emails Rhoads had recently forwarded to his personal email account. See Jones Decl. Exh. 11, ECF No. 18-12 (email forwarded by Rhoads to himself on February 16, 2017); Compl. Exh. F, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 1-6 (screenshot from Fox News story displaying the same email). Fox News interviewed and quoted Rhoads in its coverage of Chen. Compl. Exh. B, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 1-2. Since the broadcasts, Rhoads has communicated at least occasionally with Catherine Herridge, one of the

---

[1] According to Fox News, the decision not to prosecute Chen may have been made as early as 2014. Compl. Exh. D at 2, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 1-4 (Fox News article citing unnamed sources on the decision to decline prosecution).

then-Fox News journalists who reported on Chen.  See, e.g., Jones Decl. Exh. 9 at RHOADS 000096; Mot. to Supplement Exh. 1, ECF No. 23-1.[2]

In December 2018, Chen sued the FBI, DOD, and two other federal agencies under the Privacy Act, alleging "[o]n information and belief" that "one or more agents of the FBI (or, possibly, other Defendants) unlawfully disclosed to one or more persons associated with Fox News various records and information pertaining to Dr. Chen and her private affairs that the FBI had collected or generated in the course of its investigation of her[.]"  Compl. ¶ 23.  As part of discovery in that litigation, Chen served Rhoads with a subpoena in April 2020, seeking certain records related to her.  Rhoads Subpoena, ECF No. 4-2.  According to Rhoads, he complied with that subpoena but produced only "personal capacity" records because DOD was responsible for producing his "official capacity" records.  Rhoads Mem. 5.  The records Rhoads produced include some text messages, but not logs of his calls and texts.  Id. 6.  The parties dispute whether he was obligated to produce call logs pursuant to the April 2020 subpoena.  Id.; Opp. 6.

In September 2020, Chen served the instant subpoena on T-Mobile.  The subpoena seeks logs of all Rhoads's cell phone calls and text messages since December 2012.  T-Mobile Subpoena, ECF No. 4-3.  It does not seek the contents of any communication.  Id. 3.

Rhoads moved to quash the subpoena in the United States District Court for the Southern District of New York, which transferred the matter to this Court.  The Court held a hearing on the Motion to Quash on December 3, 2020.  The motion is now ripe for resolution.

---

[2] Rhoads has moved to supplement the record with a copy of a text exchange with Ms. Herridge from 2019.  The Court will grant that motion.

4

## II. Legal Standards

A district court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). To determine whether a subpoena is unduly burdensome, courts apply the general discovery standard, under which parties may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); Gouse v. District of Columbia, 359 F. Supp. 3d 51, 56 (D.D.C. 2019). "The person objecting to production has a heavy burden to show that the subpoena should not be enforced." Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, 286 F.R.D. 8, 11 (D.D.C. 2012) (citing Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)). However, "parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena." Id. (citing Fed. R. Civ. P. 45).

## III. Analysis

Rhoads's Motion to Quash requires the Court to consider two principal issues: (1) whether the information Chen seeks is relevant to her Privacy Act claim, and (2) whether compliance with the subpoena as written would impose a burden on Rhoads's privacy that is disproportionate to the needs of the case.

### A. Relevance

Rhoads contends that the information Chen seeks from T-Mobile is irrelevant to the underlying Privacy Act claim. Rhoads Mem. 10-11. The Court disagrees.

"[T]he standard of relevancy [in discovery] is a liberal one," although "not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Food Lion, Inc. v.

United Food & Com. Workers Int'l Union, AFL-CIO-CLC, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) (quoting In re Fontaine, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)).  Information "need not be admissible in evidence to be discoverable" under this standard.  Fed. R. Civ. P. 26(b)(1).

Chen seeks access to Rhoads's call and text logs to help answer an indisputably material question for her Privacy Act case:  How did her records wind up with Fox News?  Chen does not know what precise role, if any, Rhoads played in the alleged leak, but she believes that Rhoads might have personally provided the records to Fox News, either unilaterally or at the direction of the FBI, or, alternatively, he might have requested or encouraged another government agent to do so.  Hearing Tr. 9.  The notion that Rhoads was involved in disclosing Chen's records, while admittedly unproven, is not based on mere speculation.  The known evidence—including Rhoads's contacts with Fox News; his 2014 prediction that "[t]his matter will soon be in the public eye"; his 2015 statement that "Chen's story hits next week"; and his possible mass forwarding of emails about Chen, one of which would appear days later on Fox News—shows that Chen has a good-faith basis to believe Rhoads may have disclosed the documents himself or otherwise played a role in the leak.

Because the subpoena does not seek the contents of Rhoads's communications, it is unlikely to uncover independently conclusive proof of Rhoads's participation in the alleged disclosure.  However, Rhoads's call and text logs may provide material circumstantial evidence.  For example, during oral argument Chen's counsel highlighted the possibility that the logs might reveal a pattern of Rhoads calling the FBI immediately before or after communicating with Fox News.  Such a pattern would tend to show that Rhoads had an FBI "handler" in his dealings with Fox News and would thus suggest that the FBI was using Rhoads as a conduit to transfer documents from the agency's system of records to Fox.  See Hearing Tr. 10-11.  The facts may

6

or may not bear out that scenario.  The arrangement is not implausible, however, and, if proven, would be highly relevant to the merits of Chen's Privacy Act claim.  See 5 U.S.C. § 552a(b) (prohibiting disclosure "by any means of communication" of certain documents maintained by a federal agency "in a system of records").

Therefore, the subpoena to T-Mobile easily satisfies the liberal relevancy standard for discovery.

B.  Proportionality

Next, Rhoads argues that enforcement of the subpoena as written would impose a burden on his privacy that is disproportionate to the needs of the Privacy Act case.  This argument has some merit.  The Court will accordingly modify the subpoena to reduce the intrusion on Rhoads's privacy without entirely denying Chen access to the relevant information she seeks.

In discovery disputes involving access to cell phone records, courts balance the requesting party's need for discovery against the objecting party's legitimate privacy interest in information about his cell phone use.  Compare Kizer v. Starr Indem. & Liab. Co., No. 18-cv-846, 2019 WL 2017556, at *3 (W.D. Okla. May 6, 2019) (partially enforcing subpoena despite burden on privacy) with Ademiluyi v. Phillips, No. 2:14–cv–00507, 2014 WL 7012493, at *2-*3 (D. Nev. Dec. 12, 2014) (finding subpoena unduly burdensome where cell records were irrelevant and compliance would intrude on non-party's privacy).  Here, there are substantial interests to weigh on both sides.

Chen would be materially prejudiced if the Court were to quash the subpoena entirely.  As already discussed, there is at least a reasonable likelihood that the subpoenaed records will contain important evidence for Chen's Privacy Act claim, even if they also include extraneous material.  While Chen already has copies of some of Rhoads's written communications, she lacks

a comprehensive list of his communications with Fox News and with other government officers, including FBI agents. Without such a list, she is substantially limited in her ability to identify relevant patterns and anomalies in Rhoads's communications.

On the other hand, the subpoena represents a significant incursion on Rhoads's privacy. In its current form, the subpoena would allow Chen and her counsel to discover the phone numbers of everyone Rhoads spoke or texted with by cell phone for eight years. Equipped with this information, Chen would likely be able to determine the identities of many of the individuals behind those phone numbers. The subpoena could thus reveal, for example, how frequently Rhoads has texted each member of his family, or the names and specialties of healthcare providers he has called. These private communications are irrelevant to Chen's lawsuit, as she admits. Hearing Tr. 13. To be sure, the subpoena does not seek the contents of Rhoads's calls and texts. This limitation mitigates the burden on Rhoads's privacy, but it does not eliminate the burden altogether.

Moreover, the public interest requires the Court to tread carefully in enforcing a subpoena designed to investigate a news organization's dealings with its confidential sources. Although the First Amendment does not create an absolute privilege for reporter-source communications, "[c]ompelling a reporter to disclose the identity of a confidential source raises obvious First Amendment problems" because "journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant." Zerilli v. Smith, 656 F.2d 705, 710-11 (D.C. Cir. 1981). Here, Chen seeks to learn about Fox's newsgathering by seeking discovery from a separate non-party, T-Mobile. As the D.C. Circuit recognizes, this is a less constitutionally problematic alternative to seeking discovery directly from the news organization. See id. at 713-14 (faulting Privacy Act plaintiffs for failing "to

exhaust possible alternative sources of information" before seeking identity of leaker directly from journalist). Nevertheless, the Court is mindful that enforcing an overbroad subpoena in this case might produce an unwelcome chilling effect on First Amendment activity.

After careful consideration, the Court concludes that the best course of action is to impose three limitations on the subpoena.

First, the Court will narrow the temporal scope of the subpoena to the period most relevant to Chen's lawsuit. As noted above, Rhoads sent an email about Chen on September 8, 2014, stating that "[t]his matter will soon be in the public eye." Jones Decl. Exh. 3. This email, while perhaps open to multiple interpretations, is the earliest particularized evidence of Rhoads's potential involvement in a news media leak to which Chen has pointed. Thus, there is a concrete basis to suspect that Rhoads was in the process of planning or executing the disclosure of information from the investigation, or at least was aware of it, by September 8, 2014; by contrast, the notion that his involvement might have begun much earlier is far more speculative. Therefore, the Court will allow Chen to subpoena call and text logs from no earlier than August 1, 2014—approximately six weeks before the "public eye" email. The Court will also preclude Chen from obtaining call and text logs more recent than June 28, 2017, the publication date of the third and final Fox News report referenced in the Complaint. Discovery of more recent communications with Fox News would appear less relevant.

Second, the Court will require T-Mobile to produce the subpoenaed records to Rhoads and to the Court, not directly to Chen. The Court will then establish a process to allow Rhoads to make appropriate redactions before the logs are provided to Chen. The Court will invite

feedback from the parties before formalizing that process, but tentatively proposes to structure it as follows.[3]

Within fourteen days of receiving the records, Rhoads would have the opportunity to create a list identifying the phone numbers of any personal, non-professional callers or call recipients reflected on the logs whose numbers he wishes to protect, with a generic description of each person (e.g., "child," "brother," or "doctor"). Rhoads would submit that list to the Court and simultaneously provide opposing counsel with a list consisting solely of the generic descriptions, redacting the phone numbers. Chen would then have seven days to object to any of Rhoads's designations of contacts as personal. The Court would rule on any objections as expeditiously as possible, and Rhoads would then be required to produce the logs to Chen, redacting the phone numbers of any contacts properly designated as personal.

Third, the Court will subject the call and text logs to the terms of the existing protective order in the Privacy Act case. Stipulated Protective Order, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 27. It will further order that, although Chen and her counsel may research phone numbers included in the logs through open sources or proper discovery requests, they may not contact individuals associated with those numbers absent further order from the Court.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Rhoads's Motion to Quash Non-Party Subpoena to T-Mobile. The Court will order that the subpoena be modified

---

[3] As set forth in the accompanying Order, the Court will invite the parties to propose revisions to the Court's tentative procedure. Now that the parties have the benefit of the Court's general approach to the enforcement of the subpoena, the Court would encourage them to negotiate any mutually-agreeable alternative procedure that might better serve the competing interests involved.

to limit its temporal scope to the period from August 1, 2014 through June 28, 2017; and to require that T-Mobile produce the subpoenaed records to Rhoads's counsel and to the Court, not to Chen or her counsel.  The subpoenaed records will be subject to the existing Stipulated Protective Order, and Chen will be prohibited from contacting any individual associated with a telephone number included in the subpoenaed records absent further order from the Court.  The Court will also grant Rhoads's unopposed Motion to Supplement the Record.

      A separate Order shall accompany this Memorandum Opinion.

Date: <u>December 24, 2020</u>                                             CHRISTOPHER R. COOPER
                                                                               United States District Judge