UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YANPING CHEN**,<br><br>        Plaintiff,<br><br>        v.<br><br>**FEDERAL BUREAU OF INVESTIGATION**, *et al.*,<br><br>        Defendants. | Case No. 20-mc-107 (CRC) |

## OPINION AND ORDER

Last year, Dr. Yanping Chen served a subpoena on T-Mobile, the cell phone service provider of U.S. Army Chief Warrant Officer Stephen J. Rhoads. Rhoads is a key witness in Dr. Chen's Privacy Act suit against several government agencies alleging that certain of her personal records were unlawfully leaked to Fox News. Chen sought access to logs of Rhoads's phone calls and text messages from December 2012 to present. Rhoads moved to quash that subpoena. The Court granted the motion in part and denied it in part, enforcing the subpoena but limiting is temporal scope to the period from August 1, 2014 through June 28, 2017. Having since received the non-content phone logs from T-Mobile in response to the subpoena, Chen now returns to the Court asking for an expansion of the temporal scope of that production. She contends that Rhoads's "phone logs have been a gold mine" and "confirm[] a pattern of communications that emphasize [his] centrality to the Fox News reporting and" another government agent's "likely awareness" of the alleged leak. Reply at 4. Rhoads counters that this subpoena has "yielded no new or meaningful information" and that this expansion would be unduly burdensome. Opp'n at 2.

The Court finds no need for the blanket expansion that Chen requests, but it will grant the motion while prescribing particular parameters. Specifically, the Court will allow an expansion of the production only to phone numbers associated with particular persons. As with the Court's first ruling on this matter, "[t]his disposition endeavors to balance Rhoads's legitimate privacy concerns"—and the burden imposed on him—"with Chen's right to obtain relevant third-party discovery in her Privacy Act case." See Chen v. Fed. Bureau of Investigation, No. 20-mc-107 (CRC), 2020 WL 7668880, at *1 (D.D.C. Dec. 24, 2020).

I.  **Background**

The Court will not retread the full background in this case, which is laid out more thoroughly in its prior opinion. See Chen, 2020 WL 7668880, at *1–2. As a quick refresher, Chen is the plaintiff in a related Privacy Act lawsuit against several federal agencies, in which she alleges that personal records seized from her home by the Federal Bureau of Investigation were unlawfully leaked to Fox News. Chen is a naturalized citizen of the United States and the founder of the University of Management and Technology ("UMT"), an educational institution that historically attracted a significant number of military servicemembers who attended with tuition assistance from the Department of Defense ("DOD"). Compl. ¶¶ 12–13, 42, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 1. Rhoads is a U.S. Army warrant officer and a former employee of UMT. He is not a party to the Privacy Act case, though he cooperated in the FBI's investigation of Chen.

Most relevant, Rhoads sent emails to DOD employees containing what could be construed as references to a forthcoming news report about Chen. On September 8, 2014, he wrote to another Army officer, "The DoD just signed a new [Memorandum of Understanding] with UMT back in July, that would allow . . . Chen to continue her current operation for another

5 years. I aim to stop that from continuing. This matter will soon be in the public eye." First Jones Decl. Ex. 3, ECF No. 18-4. And in April 2015, Rhoads emailed a link to a Fox News story about a different FBI investigation, which he described as "related" to the Chen investigation. He stated, "Phase 1 has gone public. . . . Chen's story hits next week." Id. Ex. 7, ECF No. 18-8.

In 2017, after Chen was informed the FBI investigation would not result in charges against her, Rhoads communicated with Fox News reporters multiple times. Then Fox News broadcast three reports about Chen, on February 24, April 28, and June 28, 2017. Compl. ¶¶ 25, 30. According to Chen, these reports included material seized by the FBI in searches that occurred in 2012, id. ¶¶ 25–31, and the reports quoted from an email Rhoads had forwarded to his personal email account from his government account. First Jones Decl. Ex. 11, ECF No. 18-12. Fox News also interviewed and quoted Rhoads in its coverage of Chen. Compl. Ex. B, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 1-2.

In December 2018, Chen sued the FBI, DOD, and two other federal agencies. This dispute over the T-Mobile subpoena began in 2020. Chen served the subpoena in September 2020, seeking logs of all of Rhoads's cell phone calls and text messages since December 2012; however, the subpoena did not seek the contents of any communication. See T-Mobile Subpoena, ECF No. 4-3. In December 2020, the Court granted in part and denied in part Rhoads's motion to quash that subpoena. As relevant here, the Court modified the subpoena to limit its temporal coverage to the period from August 1, 2014 through June 28, 2017.

Chen has now revived this dispute, seeking to expand the period for which the phone logs must be produced. She requests that the early portion of the timeframe reach back to December 1, 2012 (a twenty-month expansion); on the later portion, she asks that the timeframe extend to

December 31, 2018 (an eighteen-month expansion).  The motion to expand is now ripe for resolution.

## II. Legal Standards

There is an initial question of the legal standard that applies to this motion.  Rhoads argues that it is effectively a motion for reconsideration of the Court's prior ruling, so the Court should apply the standard under Federal Rule of Civil Procedure 54(b).  Opp'n at 1.  At least one other court in this district has applied the Rule 54(b) framework to a subpoena.  See Payne v. District of Columbia, No. 10-0679 (PLF), 2016 WL 10703795, at *3 (D.D.C. Nov. 14, 2016) (Friedman, J.) (trial subpoena for testimony).  This Court will follow suit.

Rule 54(b) recognizes the Court's "inherent power to reconsider an interlocutory order 'as justice requires.'"  Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011).  Generally, courts " will grant a motion to reconsider 'only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'"  King & Spalding, LLP v. U.S. Dep't of Health & Human Servs., 395 F. Supp. 3d 116, 119–20 (D.D.C. 2019); Talbot v. U.S. Dep't of State, 373 F. Supp. 3d 212, 217 (D.D.C. 2018) (Cooper, J.) ("Revision may be necessary when . . . [a] significant change in the law or facts has occurred since the submission of the issue to the Court.") (cleaned up).

In assessing this motion, the Court is also mindful both that "parties may discover 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,'" and the "affirmative duty to prevent undue burden or expense to the persons subject to the subpoena."  See Chen, 2020 WL 7668880, at *2 (citations omitted).

4

### III. Analysis

Chen has pointed to various findings from the produced phone records that she asserts are newly discovered pieces of evidence, which were not previously available. That makes sense, since those records were produced in response to the Court's prior order. Moreover, the FBI produced other material in August 2021—a month after this motion was filed and more than eight months after this Court's prior order. The real question here is whether those records merit any expansion of the scope of production.

The Court starts with the August 1, 2014 cutoff. In setting that date as the starting point for the scope of the subpoena, the Court relied on a September 8, 2014 email from Rhoads that was "the earliest particularized evidence of [his] potential involvement in a news media leak to which Chen has pointed." Chen, 2020 WL 7668880, at *5. Recognizing that Chen sought "to identify relevant patterns and anomalies in Rhoads's communications" with Fox News and other government officers, id. at *4, the Court went back six weeks from that September 8 email. In fact, Chen has highlighted several communications that occurred throughout August 2014. These communications date back to at least August 18, and are between Rhoads and then-Fox News journalist Catherine Herridge, FBI Special Agent Timothy Pappa, and DOD employee Major General Peter Lennon. See Mot. at 4 (collecting relevant portions of Jones Decl.-Mot. to Expand Ex. 1, ECF Nos. 36-4–36-11).

Armed with these records, Chen now contends that Rhoads "likely began interacting with these individuals well before" August 1, 2014, "as he had been heavily involved in" the Chen investigation since 2012. Mot. at 4. Chen is especially keen on ascertaining when Rhoads "first began communicating with Ms. Herridge" and whether that coincides with the creation of the FBI presentation she alleges is most likely to have been unlawfully provided to Fox News. See

id. at 5; Reply at 2.  And in reply, relying on new messages produced by the FBI in August 2021 (after this motion was filed), Chen points to Rhoads's response to Special Agent Pappa's concern about potential fallout from one of Fox News's Chen stories.  That message suggests Rhoads's contacts with media potentially began years ago.  See Jones Decl.-Reply Ex. 1, ECF No. 42-2.

On the back end, the Court set June 28, 2017 as the other cutoff because that was the publication date of the final Fox News report mentioned in the Complaint.  Chen, 2020 WL 7668880, at*5.  Once again, Chen points to several communications Rhoads had with Herridge and with Special Agent Pappa throughout June 2017, up until June 26.  See Mot. at 7 (citing relevant portions of Jones Decl.-Mot. to Expand Ex. 1).  All in all, the logs have revealed hundreds of Rhoads's communications with Fox News reporters and Special Agent Pappa across the period set by the Court's prior order.  Further, Chen cites newly produced evidence from January 2021, showing that a Military Times reporter obtained government records about her as well, including some of the same records published by Fox News.  See Jones Decl.-Mot. to Expand Ex. 9, ECF No. 36-19.  Around the time Rhoads communicated with the Military Times about Chen, he was also communicating with Major General Lennon.  Id. Ex. 10, ECF No. 36-20.  Chen contends that this new material, coupled with other evidence already in the record indicating communications with Fox News after June 28, 2017, warrant an expansion of the latter half of the timeframe.

Based on the material produced since the December 2020 Order, the Court finds that Chen has shown some expansion of production is appropriate.  The phone logs remain helpful in answering "an indisputably material question for [Chen's] Privacy Act case:  How did her records wind up with Fox News?"  Chen, 2020 WL 7668880, at*3.  It would be relevant, for instance, if the logs continued to reveal a pattern of Rhoads communicating with relevant FBI

employees before or after communicating with Fox News.  "Such a pattern," as the Court previously reasoned, "would tend to show that Rhoads had an FBI 'handler' in his dealings with Fox News" and "would be highly relevant to the merits of Chen's Privacy Act claim."  Id.  This arrangement was not implausible before, and the newly produced records support a good-faith basis to believe Rhoads himself may have played a role, perhaps an important one, in the alleged leak.  His pattern of communication with journalists about Chen, and any related communications with individuals within the government, are highly relevant to these issues and the extent to which the government directed, endorsed, or is otherwise responsible for his actions.

But the records on which Chen relies, as well as the briefing on this motion, show that there are specific individuals who are particularly relevant.  Rhoads at least implicitly acknowledges this in his surreply, suggesting that if the Court were to order further production, "it should limit any expansion to the numbers associated with" certain individuals.  Surreply at 6.  The Court finds that approach prudent and will therefore cabin the expansion of production as follows.

*First*, the Court will limit the expansion to specific phone numbers that Chen can identify as associated with the following individuals:  Catherine Herridge, Special Agent Timothy Pappa, and Major General Peter Lennon.  If Chen has additional specific numbers she can identify as associated with other, relevant reporters or government officers, then she may seek a further expansion as to those numbers as well.

*Second*, as with the last order, the Court will require T-Mobile to produce the subpoenaed records to Rhoads and to the Court, not directly to Chen.  This time, Rhoads can redact all information except information as to the specified numbers.

*And third*, the Court will subject the call and text logs to the existing protective order in the Privacy Act case. Stipulated Protective Order, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 27. It will further order that, although Chen and her counsel may research phone numbers included in the logs through open sources or proper discovery requests, they may not contact individuals associated with those numbers absent further order from the Court.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [38] Chen's Motion to Expand Production of the Phone Logs of Non-Party Rhoads is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that the expansion of production is limited to phone numbers associated with specific individuals: Catherine Herridge, Special Agent Timothy Pappa, and Major General Peter Lennon. It is further

**ORDERED** that T-Mobile produce the subpoenaed records to Rhoads's counsel and to the Court, not to Chen or her counsel. It is further

**ORDERED** that all records obtained from T-Mobile shall be subject to the terms of the Stipulated Protective Order, Chen v. FBI, 18-cv-3074 (CRC), ECF No. 27. It is further

**ORDERED** that Plaintiff and her counsel shall not contact any individual whose telephone number is included in the records obtained from T-Mobile unless the Court permits otherwise. It is further

**ORDERED** that Plaintiff shall provide T-Mobile with copies of this Opinion and Order and the mailing addresses of the Court and counsel for Non-Party Rhoads. It is further

**ORDERED** that [44] Rhoads's Motion for Leave to File a Surreply is **GRANTED**.

**SO ORDERED**.

Date:  November 23, 2021  CHRISTOPHER R. COOPER
United States District Judge